UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK ANTHONY HAMMOND,

        Petitioner,

                             CASE NO. 04-CV-73385-DT

v.                         JUDGE VICTORIA A. ROBERTS

                             MAGISTRATE JUDGE PAUL J. KOMIVES

MICHIGAN PAROLE BOARD,

        Respondent.[1]

                                /

## REPORT AND RECOMMENDATION

*Table of Contents*

I.    RECOMMENDATION ................................................................. 2
II.   REPORT ........................................................................... 2
    A.   *Procedural History* ......................................................... 2
    B.   *Factual Background Underlying Petitioner's Conviction* ............................. 7
    C.   *Procedural Default* .......................................................... 7
    D.   *Standard of Review* .......................................................... 9
    E.   *Identification Claims (Claim I)* ............................................... 11
        1.   *Suggestive Line-Up* .................................................. 11
             a. Clearly Established Law ............................................ 11
             b. Analysis ......................................................... 13
        2.   *Right to Counsel* ................................................... 15
    F.   *Jury Instructions (Claim III)* ................................................ 17
        1.   *Clearly Established Law* .............................................. 17
        2.   *Analysis* ........................................................... 18
    G.   *Evidentiary Claims (Claims II, IV & V)* ........................................ 21
        1.   *Clearly Established Law* .............................................. 21
        2.   *Hearsay Evidence (Claim II)* .......................................... 23
            3.   *Bad Acts Evidence (Claims IV & V)* ............................... 23
    H.   *Prosecutorial Misconduct (Claims I-II, VI-VIII)* ................................ 24
        1.   *Clearly Established Law* .............................................. 25
        2.   *Perjury* ............................................................ 25
        3.   *Bolstering* ......................................................... 26
        4.   *Comments* ........................................................... 28
        5.   *Production of Res Gestae Witnesses* .................................... 28
        6.   *Introduction of Post Arrest Statement* ................................. 29
            a. Use of Silence .................................................... 30
            b. Corpus Delicti ................................................... 31
            c. Probable Cause for Arrest ......................................... 32

---

[1]By Order entered this date, the Michigan Parole Board has been substituted for Thomas Birkett as the proper respondent in this action.

     I.     *Ineffective Assistance of Counsel* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
         1.     *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
         2.     *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
            a.  Derivative Ineffective Assistance Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
            b.  Other Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
     J.     *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37
  III.     NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*     *     *     *     *

I.    <u>RECOMMENDATION</u>: The Court should deny petitioner's application for the writ of habeas corpus.

II.    <u>REPORT</u>:

A.    *Procedural History*

    1.    Petitioner Mark Anthony Hammond is a former state prisoner, currently on parole. At the time he filed his habeas application, petitioner was incarcerated at the Lehman Correctional Camp in Grayling, Michigan.

    2.    On September 21, 2000, petitioner was convicted of one count of first degree home invasion, MICH. COMP. LAWS § 750.110a(2), following a jury trial in the Macomb County Circuit Court. On December 6, 2000, he was sentenced to a term of 50-240 months' imprisonment.

    3.    Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

    I.    DEFENSE COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE IN FAILING TO SUPPRESS MS. MULLINS' PRE-TRIAL IDENTIFICATION OF MR. HAMMOND WHERE THE PHOTO IDENTIFICATION PROCEDURES WERE SUGGESTIVE AND VIOLATED MR. HAMMOND'S RIGHTS TO COUNSEL AND DUE PROCESS AND FOR FAILING TO INTRODUCE ADDITIONAL EVIDENCE THAT WOULD HAVE EFFECTIVELY CHALLENGED MS. MULLINS' IDENTIFICATION OF MR. HAMMOND.

        A.    THE PHOTO IDENTIFICATION PROCESS WAS UNDULY SUGGESTIVE IN VIOLATION OF MR. HAMMOND'S RIGHTS

2

TO COUNSEL AND DUE PROCESS.

B.      COUNSEL DID NOT CHALLENGE THE PRE-TRIAL IDENTIFICATIONS AND REQUEST A HEARING.

II.     DEFENSE COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE FOR FAILING TO CHALLENGE MR. HAMMOND'S UNLAWFUL WARRANTLESS ARREST, WHICH VIOLATED HIS FEDERAL AND STATE CONSTITUTIONAL RIGHTS, AND TO SUPPRESS HIS POST-ARREST STATEMENTS AS UNLAWFUL FRUITS OF THAT ARREST.

III.    COUNSEL WAS INEFFECTIVE AS HE FAILED TO OBJECT TO THE IMPROPER OPINION TESTIMONY OF DETECTIVE KALTZ; DID NOT OBJECT TO IRRELEVANT AND PREJUDICIAL JURY INSTRUCTION; AND DID NOT MAKE CERTAIN A KEY ALIBI WITNESS WAS AVAILABLE FOR TRIAL.

A.      BECAUSE THE PROSECUTOR WAS PERMITTED TO INTRODUCE INADMISSIBLE AND DAMAGING POLICE OPINION TESTIMONY, MR. HAMMOND'S CONVICTIONS SHOULD BE REVERSED.

B.      THE TRIAL COURT ERRED IN GIVING AN IRRELEVANT AND PREJUDICIAL INSTRUCTION, WHICH TOLD THE JURY THAT MR. HAMMOND HAD A PRIOR CONVICTION.

C.      A KEY ALIBI WITNESS' PRESENCE WAS NOT SECURED FOR TRIAL.

IV.     THE ADMISSION OF HIGHLY PREJUDICIAL "OTHER BAD ACTS" CHARACTER EVIDENCE WAS REVERSIBLE ERROR AND ALONG WITH FALSE TESTIMONY FROM THE OFFICER IN CHARGE REGARDING THE INVESTIGATION IN THIS CASE DEPRIVED MR. HAMMOND OF A FAIR TRIAL DUE TO PROSECUTORIAL MISCONDUCT.

V.      MR. HAMMOND SEEKS A REMAND TO THE LOWER COURT AS INACCURATE INFORMATION FROM HIS PRESENTENCE REPORT AND SENTENCING INFORMATION REPORT WAS RELIED UPON, ENTITLING HIM TO A RESENTENCING; AND WAS DUE TO HIS COUNSEL INEFFECTIVENESS.

In addition, petitioner filed a *pro se* supplemental brief raising the following claims:

3

I.      THE DEFENDANT WAS DENIED HIS DUE PROCESS RIGHT TO A
        FAIR TRIAL DUE TO THE PROSECUTORIAL MISCONDUCT AND
        INEFFECTIVE ASSISTANCE OF COUNSEL, WHEN THE
        PROSECUTOR KNOWINGLY INTRODUCE[D] INADMISSIBLE
        TESTIMONY/EVIDENCE CONCERNING MS. MULLINS' PRE-TRIAL
        PHOTO LINEUP IDENTIFICATIONS, THAT WERE HIGHLY
        SUGGESTIVE, IN VIOLATION OF HIS RIGHT TO COUNSEL, AND
        ALLOWED MS. MULLINS' IN COURT IDENTIFICATION WITHOUT
        FIRST CONDUCTING AN EVIDENTIARY HEARING AS REQUIRED
        BY LAW.  DEFENSE FAILING TO SUPPRESS MS. MULLINS'S PRE-
        TRIAL, AND IN COURT IDENTIFICATIONS. THE PROSECUTOR AND
        DEFENSE ALLOWED DET. KALTZ'S FALSE/PERJURED TESTIMONY
        CONCERNING THE PHOTOGRAPHIC PROCEDURES, AND TIME OF
        ARREST, TO GO [UNCORRECTED].

II.     THE DEFENDANT WAS DENIED HIS DUE PROCESS RIGHT TO A
        FAIR TRIAL DUE TO PROSECUTORIAL MISCONDUCT AND
        INEFFECTIVE ASSISTANCE OF COUNSEL, WHEN THE
        PROSECUTOR AND DET. KALTZ VOUCHED FOR THE
        WITNESS/GUILT OF DEFENDANT, INTRODUCED INADMISSIBLE
        THIRD PERSON TESTIMONY CONCERNING MS. MULLINS' PRE-
        TRIAL PHOTO LINEUP IDENTIFICATIONS.  DEFENSE FAILING TO
        OBJECT.  PRSOECUTOR/DEFENSE CONSPIRED TO INTRODUCE
        INADMISSIBLE THIRD PERSON TESTIMONY BY DET. KALTZ
        CONCERNING A 4TH PHOTO LINEUP SHOWN TO ANOTHER
        RESIDENT (NON-TESTIFYING WITNESS) OF THE APT. COMPLEX.
        PROSECUTORS CONSPIRED/COMMIT[TED] PERJURY AND
        SUBORNED PERJURY FROM DEFENSE COUNSEL AT TRIAL.

III.    THE DEFENDANT WAS DENIED HIS DUE PROCESS RIGHT TO A
        FAIR TRIAL, DUE PROCESS OF LAW, AND TO BE TRIED BY A
        PROPERLY INSTRUCTED JURY.  DUE TO JUDICIAL MISCONDUCT,
        PROSECUTOR MISCONDUCT, AND INEFFECTIVE ASSISTANCE OF
        COUNSEL, WHEN ALL THREE ALTERED THE CHARGED OFFENSE
        FROM (INTENT TO COMMIT LARCENY) TO (INTENT TO COMMIT
        LARCENY OR FELONY) AT TRIAL.  DEFENSE COUNSEL RELIEVED
        JURY OF RESPONSIBILITY TO DETERMINE IDENTITY.

IV.     THE DEFENDANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO
        A FAIR TRIAL, DUE TO PROSECUTOR MISCONDUCT &
        INEFFECTIVE ASSISTANCE OF COUNSEL, WHEN THE
        PROSECUTOR FALSIFIED PRIOR BAD ACTS EVIDENCE TO
        MANIPULATE THE ALIBI WITNESS INTO DIVULGING ADDITIONAL
        PRIOR BAD ACTS EVIDENCE, ACCUSED ALIBI WITNESS OF BEING

ACCESSORY, AND TOLD THE JURY HE LIED.  DEFENSE FAILING TO MOTION FOR DISCOVERY, AND OBJECT.

V.      IT WAS "REVERSIBLE ERROR" VIOLATING THE DEFENDANT'S DUE PROCESS RIGHT TO A FAIR TRIAL WHEN THE COURT ALLOWED THE PROSECUTOR TO INTRODUCE INTO EVIDENCE "TWO UNEDITED MUGSHOTS" OF THE DEFENDANT AT TRIAL.

VI.     THE DEFENDANT WAS DENIED HIS DUE PROCESS RIGHT TO A FAIR TRIAL, DUE TO PROSECUTOR MISCONDUCT & INEFFECTIVE ASSISTANCE OF COUNSEL, WHEN THE PROSECUTOR ELICITED TESTIMONY BY DET. KALTZ, AND LT. BLASKY WHICH FALSELY IMPLIED "SIMILAR BAD ACTS" BY THE DEFENDANT. DEFENSE FAILED TO OBJECT AND FALSELY IMPLIED "SIMILAR BAD ACTS" HIMSELF.

In a separate motion for peremptory reversal filed in the court of appeals, petitioner raised these six

claims, as well as four additional claims:

VII.    THE DEFENDANT WAS DENIED HIS DUE PROCESS RIGHT TO A FAIR TRIAL DUE TO PROSECUTORIAL MISCONDUCT, TRIAL COURT ERROR, WHEN THE JUDGE ALLOWED THE PROSECUTOR TO DISPARAGE THE DEFENDANT, QUESTIONING ABOUT HIS UNEMPLOYMENT.  THIS ISSUE WAS PRESERVED BY DEFENSE COUNSEL OBJECTION.   BUT DEFENSE COUNSEL WAS INEFFECTIVE FOR FAILING TO ESTABLISH THIS FROM COMMON PRACTICE, MATTER OF ROUTINE/HABIT, AND FAILING TO OBJECT TO THE PROSECUTOR'S IMPROPER INJECTION OF "PRIOR BAD ACTS EVIDENCE" AGAIN.

VIII.   DEFENDANT WAS DENIED HIS DUE PROCESS RIGHT TO A FAIR TRIAL DUE TO PROSECUTOR MISCONDUCT & INEFFECTIVE ASSISTANCE OF COUNSEL, WHEN THE PROSECUTION DESTROYED AND SUPPRESSED EXCULPATORY EVIDENCE AND TESTIMONY BY FAILING TO INVESTIGATE, AND PRODUCE RES GESTAE WITNESSES AT TRIAL.   DEFENSE COUNSEL WAS INEFFECTIVE, FAILING TO INVESTIGATE, FAIL A MOTION FOR DISCOVERY AND PRODUCTION OF EVIDENCE, AND INSURE THE PRESENCE OF ALL RES GESTAE WITNESSES AND ALIBI WITNESSES, AND CALL CHARACTER WITNESSES AT TRIAL.

IX.     THE DEFENDANT WAS DENIED HIS DUE PROCESS RIGHT TO A FAIR TRIAL DUE TO PROSECUTORIAL MISCONDUCT &

INEFFECTIVE ASSISTANCE OF COUNSEL, WHEN THE PROSECUTOR INTRODUCED THE DEFENDANT'S POST-ARREST STATEMENTS BEFORE THE CORPUS DELICTI, DEFENSE FAILED TO OBJECT, AND SUPPRESS THE STATEMENTS AS TAINTED FRUITS OF AN ILLEGAL ARREST & ILLEGAL DETENTION. DET. KALTZ ENGAGED IN DELIBERATE ACTS OF NEGLECT AND DECEPTION CONCERNING THE INVESTIGATION AND CRUCIAL EVIDENCE PRIOR TO/AT TRIAL, FAILING TO INVESTIGATE, AND GAVE FALSE/PERJURED TESTIMONY CONCERNING THE INITIAL PHOTO IDENTIFICATIONS, TIME OF ARREST, THUS DEPRIVING THE DEFENDANT OF DUE PROCESS OF LAW.

X.     THE DEFENDANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO TESTIFY AT TRIAL DUE TO INEFFECTIVE ASSISTANCE OF COUNSEL, WHEN COUNSEL REFUSED TO MEET WITH HIM PRIOR TO TRIAL, TO INFORM/ADVISE HIM OF CRIMINAL LAW AND IT'S PRACTICAL APPLICATIONS TO HIS CASE, TO REVIEW ALL EVIDENCE TO BE PRESENTED AT TRIAL, TO CONSULT WITH HIM TO PREPARE A LINE OF QUESTIONS TO BE ASKED OF PROSECUTION WITNESSES, AND HIMSELF, SO HE WOULD BE PREPARED TO TESTIFY, AND REFUSED TO CALL HIM TO THE STAND. THUS DEPRIVING HIM OF HIS CONSTITUTIONAL RIGHTS UNDER THE 5TH, 6TH, AND 14TH AMENDMENTS TO THE U.S. CONSTITUTION.

The court of appeals denied petitioner's motion for peremptory reversal. Further, the court found no merit to petitioner's claims, and affirmed his conviction and sentence. *See People v. Hammond*, No. 231540, 2003 WL 22160437 (Mich. Ct. App. Sept. 18, 2003) (per curiam).

4.     Petitioner, proceeding *pro se*, sought leave to appeal these issues to the Michigan Supreme Court. The Supreme Court denied petitioner's application for leave to appeal in a standard order. *See People v. Hammond*, 469 Mich. 1017, 677 N.W.2d 25 (2004).

5.     Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on August 31, 2004. Although phrased and numbered somewhat differently, petitioner essentially raises all of the claims raised in his *pro se* brief in the Michigan Court of Appeals as grounds for the writ of habeas corpus.

6.      Respondent filed his answer on March 11, 2005. He contends that petitioner's claims are barred by petitioner's procedural default in the state courts and are without merit.

7.      Petitioner filed a supplemental brief in support of his habeas application on July 11, 2005.

B.      *Factual Background Underlying Petitioner's Conviction*

Petitioner was convicted of home invasion in connection with a break-in at the home of Laura Mullins on September 20, 1999. The principal evidence against petitioner came from the testimony of Mullins. She testified that, while taking a shower on the evening in question, she noticed a man standing in her kitchen. She started screaming for the man to leave, and the man came into the bathroom. He reached in as if to touch her, but did not do so. He then left, taking with him a bra that she had taken off before entering the shower. Mullins identified petitioner in several photographic line-ups and at trial as the man who broke into her home. The police investigation revealed that the intruder had entered through an open window, cutting the screen covering the window. Petitioner presented an alibi defense, calling his mother and his brother to testify that he was at the home that they shared during the time of the break-in.

C.      *Procedural Default*

Respondent first contends that petitioner's claims are barred by petitioner's procedural default in the state courts, because petitioner failed to raise these claims on direct appeal. The Court should disagree.

Under the procedural default doctrine, a federal habeas court will not review a question of federal law if the state court's decision rests on a substantive or procedural state law ground that is independent of the federal question and is adequate to support the judgment. *See Coleman v.*

7

*Thompson*, 501 U.S. 722, 729 (1991).  However, "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar." *Harris*, 489 U.S. at 263.  Furthermore, "only a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review . . . of a federal constitutional claim." *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (quoting *James v. Kentucky*, 466 U.S. 341, 348-51 (1984)); *see also*, *Calderon v. United States Dist. Ct. for the E. Dist. of Cal.*, 96 F.3d 1126, 1129 (9th Cir. 1996) (internal quotation omitted) ("For the procedural default doctrine to apply, a state rule must be clear, consistently applied, and well-established at the time of the petitioner's purported default.").

Even were the Court to conclude that petitioner's claims are procedurally defaulted, it is still necessary to consider the claims on the merits.  As noted above, petitioner can still have his defaulted claims reviewed on the merits if he can show cause for, and prejudice attributable to, his default in the state courts.  With respect to each claim, petitioner contends that his counsel was ineffective for failing to challenge the alleged errors at trial.  If petitioner's position is correct, counsel's ineffectiveness may constitute cause to excuse any procedural default.  *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  To demonstrate that appellate counsel was ineffective petitioner must show, *inter alia*, that counsel's performance was deficient and that he was prejudiced by counsel's performance, a test which in turn requires an examination of the merits of petitioner's claims.  Given that the cause and prejudice inquiry merges with an analysis of the merits of petitioner's defaulted claims, it is better to simply consider the merits of these claims, even if they are defaulted.  *See Jamison v. Collins*, 100 F. Supp. 2d 647, 676

8

(S.D. Ohio 2000); *Watkins v. Miller*, 92 F. Supp. 2d 824, 832 (S.D. Ind. 2000); *cf. Strickler v.*

*Greene*, 527 U.S. 263, 282 (1999) (considering merits of petitioner's habeas claims where inquiry

into the merits mirrored cause and prejudice inquiry).

D.    *Standard of Review*

      Because petitioner's application was filed after April 24, 1996, his petition is governed by

the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No.

104-132, 110 Stat. 1214 (Apr. 24, 1996).  *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997).

Amongst other amendments, the AEDPA amended the substantive standards for granting habeas

relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
>     (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>     (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

      "[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning."

*Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002).  "A

state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts

the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are

materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a

result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam)

(quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535

U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements

10

of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue.  *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

E.      *Identification Claims (Claim I)*

        Petitioner first raises a number of challenges to the victim's various identifications of him. Mullins identified petitioner in three separate photographic lineups, *see* Prelim. Exam. Tr., at 18-19; Trial Tr., dated 9/20/00, at 15-16, as well as in-court at both the preliminary examination and trial, *see* Prelim. Exam. Tr., at 7; Trial Tr., dated 9/20/00, at 16.  Petitioner contends that Mullins's identifications should have been inadmissible for a variety of reasons.  Specifically, he contends that:  (1) the photo line-ups were impermissibly suggestive; and (2) he was denied his right to counsel.  The Court should conclude that petitioner is not entitled to habeas relief on these claims.

        1.      *Suggestive Line-Up*

        Petitioner first contends that Mullins's photographic identifications of him were the result of impermissibly suggestive procedures, and that the identifications therefore should have been suppressed.  The Court should conclude that petitioner is not entitled to habeas relief on this claim.

                *a. Clearly Established Law*

        A pre-trial identification procedure violates the Constitution if "the confrontation conducted . . . was so unnecessarily suggestive and conducive to irreparable mistaken identification that [the defendant] was denied due process of law."  *Stovall v. Denno*, 388 U.S. 293, 301-02 (1967). Similarly, a subsequent in-court identification following an impermissibly suggestive pre-trial

identification is unconstitutional if the pr-trial "identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384 (1968).  *See generally*, *Neil v. Biggers*, 409 U.S. 188, 197-98 (1972).  A suggestive line-up alone, however, does nor require exclusion of identification evidence. "The admission of testimony concerning a suggestive and unnecessary identification procedure does not violate due process so long as the identification possesses sufficient aspects of reliability." *Manson v. Brathwaite*, 432 U.S. 98, 106 (1977).  Thus, the central question in a case where the pre-trial identification procedure is impermissibly suggestive is "whether under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive." *Biggers*, 409 U.S. at 199; *accord Manson*, 432 U.S. at 114.  The factors relevant to this "totality of the circumstances" analysis include "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Biggers*, 409 U.S. at 199-200; *accord Manson*, 432 U.S. at 114.

Thus, a court must "follow[] a two-step analysis in determining whether an identification is admissible." *United States v. Crozier*, 259 F.3d 503, 510 (6th Cir. 2001).  First, the court must "consider whether the identification procedure was suggestive." *Id.* If it was not, the "identification testimony is generally admissible without further inquiry," and any question as to the reliability of the identification "goes to the weight of the evidence, not its admissibility." *United States v. Maldonado-Rivera*, 922 F.2d 934, 973 (2d Cir. 1990).  If, on the other hand, the procedure was suggestive, the court must "then determine whether, under the totality of the circumstances, the

12

identification was nonetheless reliable and therefore admissible." *Crozier*, 259 F.3d at 510.

### b.  Analysis

Here, the Court should conclude that petitioner cannot establish that the line-up procedures were impermissibly suggestive.  This prong of the inquiry "questions whether the procedure itself steered the witness to one suspect or another, independent of the witness's honest recollection." *Wilson v. Mitchell*, 250 F.3d 388, 397 (6th Cir. 2001).  Thus, a line-up is impermissibly suggestive where it "emphasizes the focus on a single individual thereby increasing the likelihood of misidentification."  *United States v. Montgomery*, 150 F.3d 983, 992 (9th Cir. 1998) (internal quotation omitted); *see also*, *United States v. Wong*, 40 F.3d 1347, 1359-60 (2d Cir. 1994); *Griffin v. Rose*, 546 F. Supp. 932, 936 (E.D. Tenn. 1981), *aff'd*, 703 F.2d 561 (6th Cir. 1982).  In short, an identification procedure is suggestively only if it "directs undue attention to a particular" person. *State v. Ramires*, 37 P.3d 343, 350 (Wash. Ct. App. 2002).  Thus, a photographic array is impermissibly suggestive if "the picture of the accused, matching descriptions given by the witness, so stands out from all of the other photographs as to suggest to an identifying witness that that person was more likely to be the culprit."  *United States v. Thai*, 29 F.3d 785, 808 (2d Cir. 1994) (internal quotation omitted).

Here, petitioner's picture did not stand out from all of the other photos in the array.  The second and third photo arrays are attached as Exhibit C to petitioner's habeas application.  Both arrays are identical, except that in one array there is a mug shot picture of petitioner in which he has cuts and bruises on his face, and in the other array the picture of petitioner is not a mug shot and shows him without these injuries.  All of the photographs are of white males, approximately petitioner's age, with similar hair length and facial hair.  Nothing in either array makes petitioner's

13

photo stand out from all of the others.  In short, after viewing the arrays the Court "cannot say that under all the circumstances of this case there is a very substantial likelihood of irreparable misidentification.  Short of that point, such evidence is for the jury to weigh."  *Manson*, 432 U.S. at 116.

Petitioner raises several arguments against this conclusion.  First, he contends that in the first photo identification, which was not preserved, the victim was shown only a single photograph of him, and that this tainted the subsequent identification.  In support of this claim, petitioner relies on the victim's testimony at the preliminary examination, where she testified that "the first time they showed me *a photo* I picked the defendant out.  And then they put him *with other pictures* and I still picked him out."  Prelim. Exam. Tr., at 18 (emphasis added).  Petitioner argues that this testimony shows that the first line-up consisted of a single picture of him.  However, the entirety of the victim's testimony belies this interpretation of her use of "a photo" in the above quoted passage.  The victim clearly testified, in response to the same question, that the police showed her "three different *groups*" of photographs, and that each grouping consisted of six photographs.  *See id*.  She further testified that "[t]hey showed me the first group, the second group, and then later that day they actually came to my work and showed me another group of photos."  *Id*. at 19.  Thus, despite her use of the singular "a photo" at one point in her testimony, it is clear that the victim's testimony was that she was shown three groups of photographs, from which she selected petitioner's picture each time.

Petitioner also suggests that the photographic line-ups were impermissibly suggestive because the victim's description of the perpetrator did not match his physical characteristics.  However, for the most part the victim's description and his characteristics do match.  As the court

14

of appeals explained, "the victim's description regarding defendant's hair color and texture, and his mustache matched defendant's physical characteristics." *Hammond*, 2003 WL 22460437, at *2, slip op. at 3.  It is true that the victim's description of petitioner's height and eye color did not match his actual characteristics.  However, because there were no impermissibly suggestive procedures employed, these inconsistences were a matter for the jury to assess in deciding the weight to be accorded the victim's identifications, not a matter of admissibility.

In short, petitioner has failed to show that the photographic line-ups involved any impermissibly suggestive procedures which led to a substantial likelihood of irreparable misidentification.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

    2.    *Right to Counsel*

Petitioner also argues that he was denied his right to have counsel present at the photographic line-up.  In making this claim, petitioner argues that Detective Kaltz lied about the time of his arrest, and that contrary to the findings of the Michigan Court of Appeals he was in custody at the time of the third photo lineup.  The Court should conclude that petitioner is not entitled to habeas relief on this claim.

Petitioner contends that Detective Kaltz lied about the time he was arrested, and that he had indeed been arrested and was in custody at least by the time of the victim's third photographic identification.  The Michigan Court of Appeals rejected this argument, explaining:

> [I]n our review of the record, defendant has failed to establish an inference that he was in custody on the basis of the victim's preliminary examination testimony that she was shown the third photo lineup at 2:30 p.m. and defendant was given his constitutional rights at 3:30 p.m.  The arresting police officer testified at trial that he arrived at defendant's home immediately after the victim identified defendant in the third photo lineup.  Assuming that the police report accurately reflects that defendant

> was given his constitutional rights at 3:30 p.m., defendant has not established a reasonable inference that he was in custody at the time of the third photo lineup.

*Hammond*, 2003 WL 22160437, at \*3, slip op. at 4. In support of his claim, petitioner suggests various "reasonable inferences" of the time it took Kaltz to perform various tasks, suggesting that the time line as testified to by Kaltz could not have occurred. He has offered nothing to show that these "reasonable inferences" are necessarily required by the testimony of Mullins and Kaltz, and he has offered no clear and convincing evidence as required to rebut the state court's finding. *See* 28 U.S.C. § 2254(e)(2). In other words, petitioner has failed to show that the state court resolution of this claim was based on an unreasonable determination of the facts under § 2254(d)(2).

More fundamentally, as a legal matter it is simply irrelevant whether petitioner was in custody at the time of the photographic line-ups. The Sixth Amendment provides, in relevant part: "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. CONST. amend VI. The right to counsel exists at all so-called "critical stages" of the trial process, that is, "at every stage of a criminal proceeding where substantial rights of a criminal accused may be affected." *Mempa v. Ray*, 389 U.S. 128, 134 (1967). As a general matter, once criminal proceedings have begun a corporeal line-up is such a "critical stage" of the proceedings to which the right of counsel attaches. *See Gilbert v. California*, 388 U.S. 263, 272 (1967); *United States v. Wade*, 388 U.S. 218 (1967). In *United States v. Ash*, 413 U.S. 300 (1973), however, the Court expressly distinguished between photographic and corporeal line-ups, and declined to extend the Sixth Amendment right of counsel to photographic line-ups, holding that "the Sixth Amendment does not grant the right to counsel at photographic displays conducted by the Government for the purpose of allowing a witness to attempt an identification of the offender." *Id*. at 321; *see also*, *Moore v. Illinois*, 434 U.S. 220, 227 n.3 (1977). Put simply, regardless of whether

16

he was already in custody, "[p]etitioner had no federal constitutional right to counsel at the photo display because it was a photo display, not an in-person lineup." *Hanks v. Jackson*, 123 F. Supp. 2d 1061, 1071 (E.D. Mich. 2000) (Gadola, J.); *see also*, *Payne v. Smith*, 207 F. Supp. 2d 627, 645 (E.D. Mich. 2002) (O'Meara, J.).   Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

F.      *Jury Instructions (Claim III)*

Petitioner next contends that he was denied a fair trial by the court's jury instructions.  The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.      *Clearly Established Law*

It is well established that habeas corpus is not available to remedy a state court's error in the application of state law.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Jackson v. Ylst*, 921 F.2d 882, 885 (9th Cir. 1990) (a federal court on habeas review "ha[s] no authority to review a state's application of its own laws).  Thus, in order for habeas corpus relief to be warranted on the basis of incorrect jury instructions, a petitioner must show more than that the instructions are undesirable, erroneous or universally condemned; rather, taken as a whole, they must be so infirm that they rendered the entire trial fundamentally unfair.  *See Estelle*, 502 U.S. at 72 (1991); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *Wood v. Marshall*, 790 F.2d 548, 551-52 (6th Cir. 1986); *cf. United States v. Sheffey*, 57 F.3d 1419, 1429-30 (6th Cir. 1995) (standard of review for jury instructions challenged on direct criminal appeal). As the Supreme Court noted in *Estelle*, the Court should "also bear in mind [the Supreme Court's] previous admonition that we 'have defined the category of infractions that violate

17

"fundamental fairness" very narrowly.'"  *Estelle*, 502 U.S. at 72-73 (quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990)).

Despite this deferential standard of review, a jury instruction will not withstand scrutiny if it submits alternative theories for the jury to convict, one of which is permissible and the other unconstitutional, and the reviewing court cannot determine on which theory the jury relied.  *See Zant v. Stephens*, 462 U.S. 862, 881-83 (1983); *Bachellar v. Maryland*, 397 U.S. 564, 571 (1970); *United States v. Wilkinson*, 26 F.3d 623, 625 (6th Cir. 1994).  *But see Griffin v. United States*, 502 U.S. 46, 56 (1991) (general jury verdict is valid if sufficient evidence supports one of the grounds for conviction, so long as the other submitted grounds are neither illegal nor unconstitutional, but merely unsupported by the evidence); *United States v. Mari*, 47 F.3d 782, 785-86 (6th Cir. 1995). An instruction is also invalid if it can be viewed by the jury as shifting the burden of proving an element of the case onto the defendant, as when it instructs the jury to presume that a person intends to commit the natural, ordinary and usual consequences of his voluntary actions, *see Sandstrom v. Montana*, 442 U.S. 510, 524 (1979), or to presume malice from either an unlawful act or from the use of a deadly weapon, *see Yates v. Evatt*, 500 U.S. 391, 401-02 (1991); *Houston v. Dutton*, 50 F.3d 381, 385-86 (6th Cir.1995).  If an instruction is ambiguous and not necessarily erroneous, it can run afoul of the Constitution only if there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution.  *See Estelle*, 502 U.S. at 72 & 73 n.4; *Boyde v. California*, 494 U.S. 370, 380 (1990).  Nonetheless, instructional errors of state law will rarely form the basis for federal habeas corpus relief.  *See Estelle*, 502 U.S. at 71-72.

2.     *Analysis*

Petitioner contends that the court erred in instructing the jury that he could be convicted of

18

home invasion if the jury found that he had the intent to commit any felony when he broke into the

victim's home, rather than that he had to have had the intent to commit a larceny.  Petitioner also

contends that this instruction constituted a constructive amendment of the information for which he

had no notice, and that it violated his right to a unanimous verdict because the jury did not have to

agree on which felony he had the intent to commit.  The Court should conclude that petitioner is not

entitled to habeas relief on these claims, because the instructions in their entirety directed the jury

to consider only whether petitioner had the intent to commit larceny.

The challenged portion of the court's instruction came during the court's explanation to the

jury of the concept of specific intent.  The court explained:

> The crime of home invasion in the first degree requires proof of a specific
> intent.  This means that the prosecution must prove not only that the defendant did
> certain acts but that he did the acts with the intent to cause a particular result.  For
> the crime of home invasion in the first degree, this means that the prosecution must
> prove that the defendant intended to commit larceny or a felony while inside.

Trial Tr., dated 9/21/00, at 55.  Although the court did use the phrase "larceny or a felony," thus

implying that another felony would satisfy the elements of the statute, the court's immediately

preceding instruction on the actual elements of the offense instructed the jury on only one felony:

larceny.  Specifically, the court instructed the jury that the third element of the home invasion charge

required the jury to find

> that when the defendant broke and entered the dwelling, he intended to commit
> larceny.
>      The crime of larceny consists of the following elements, an actual or
> constructively [sic] taking of goods or property, a carrying away or asportation.  The
> carrying away must be with felonious intent.  The subject must take goods or
> personal property of another.  The taking must be without the consent and against the
> will of the owner.

*Id*. at 54-55.  It is well established that, on habeas review, "'a single instruction to a jury may not

be judged in artificial isolation, but must be viewed in the context of the overall charge.'" *Boyde v. California*, 494 U.S. 370, 378 (1990) (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).  Taken as a whole, the instruction to the jury permitted a finding of guilt if, and only if, it concluded that petitioner had entered with the intent to commit a larceny, and not some other felony.  Thus, petitioner cannot show that the court's isolated misstatement denied him a fair trial.

Further, even if the instruction could have been viewed by the jury as permitting a finding of guilt based on its conclusion that petitioner committed some felony other than larceny, petitioner is incorrect that the instruction denied him his right to a unanimous verdict or to notice of the charges.  As to unanimity, in *Richardson v. United States*, 526 U.S. 813 (1999), "the Supreme Court distinguished between the elements of a crime, which it held had to be determined unanimously, and the means by which an element may be accomplished, which does not require unanimity."  *United States v. Davis*, 306 F.3d 398, 413 (6th Cir. 2002) (discussing *Richardson*, 526 U.S. at 817); *see also*, *Schad v. Arizona*, 501 U.S. 624, 632-45 (1991) (plurality opinion).  Here, larceny and other felonies are merely different ways of satisfying one statutory element of the home invasion charge–felonious intent.  Because the element could be satisfied by different means, *i.e.* by larceny or the commission of some other felony, the court's instruction did not deprive petitioner of his right to a unanimous verdict.  *See Coe v. Bell*, 161 F.3d 320, 348 (6th Cir. 1998) (citing *Schad* for the proposition that "it is acceptable for a first-degree murder conviction to be based on two alternative theories even if there is no basis to conclude which one (if only one) the jury used.").

Further, petitioner cannot establish that the court's instruction deprived him of notice of the charges against him.  The Sixth Amendment provides, in relevant part, that a criminal defendant has the right to "be informed of the nature and cause of the accusation" against him.

U.S. CONST. amend VI.  Notice and an opportunity to defend against the charges as guaranteed by the Sixth Amendment are an integral part of the due process protected by the Fourteenth Amendment, and are accordingly applicable in state prosecutions.  *See Cole v. Arkansas*, 333 U.S. 196, 201 (1948); *In re Oliver*, 333 U.S. 257, 273 (1948).  The complaint or indictment challenged need not be perfect under state law so long as it adequately informs the petitioner of the crime in sufficient detail so as to enable him to prepare a defense.  Thus, "[a]n indictment which fairly but imperfectly informs the accused of the offense for which he is to be tried does not give rise to a constitutional issue cognizable in habeas proceedings."  *Mira v. Marshall*, 806 F.2d 636, 639 (6th Cir. 1986); *see also*, *United States v. Buckley*, 689 F.2d 893, 899 (9th Cir. 1982); *Ransom v. Davis*, 613 F. Supp. 430, 431 (M.D. Tenn. 1984), *aff'd*, 767 F.2d 921 (6th Cir. 1985).  "[A] charge is sufficiently specific when it contains the elements of the crime, permits the accused to plead and prepare a defense, and allows the disposition to be used as a bar in a subsequent prosecution."  *Fawcett v. Bablitch*, 962 F.2d 617, 618 (7th Cir. 1992).  Here, larceny as the underlying felony was the only argument advanced by the prosecutor, and was the only specific underlying felony instructed on by the court.  Petitioner was able to plead with respect to this underlying felony, prepare a defense, and may use the disposition as a bar to subsequent prosecution.  Thus, petitioner cannot show that he was deprived of notice of the charges against him.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

G.   *Evidentiary Claims (Claims II, IV & V)*

Petitioner next challenges a number of the trial court's evidentiary rulings.  The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.   *Clearly Established Law*

21

It is well established that habeas corpus is not available to remedy a state court's error in the application of state law.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Jackson v. Ylst*, 921 F.2d 882, 885 (9th Cir. 1990) (a federal court on habeas review "ha[s] no authority to review a state's application of its own laws). Thus, unless a violation of a state's evidentiary rule results in the denial of fundamental fairness, an issue concerning the admissibility of evidence does not rise to the level of a constitutional magnitude.  *See Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988); *Davis v. Jabe*, 824 F.2d 483, 487 (6th Cir. 1987).  "[A] federal habeas court has nothing whatsoever to do with reviewing a state court ruling on the admissibility of evidence under state law.  State evidentiary law simply has no effect on [a court's] review of the constitutionality of a trial, unless it is asserted that the state law itself violates the Constitution."  *Pemberton v. Collins*, 991 F.2d 1218, 1223 (5th Cir. 1993).  As the Sixth Circuit has noted, "[e]rrors by a state court in the admission of evidence are not cognizable in habeas proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial."  *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994).

In short, "[o]nly when the evidentiary ruling impinges on a specific constitutional protection or is so prejudicial that it amounts to a denial of due process may a federal court grant a habeas corpus remedy."  *Barrett v. Acevedo*, 169 F.3d 1155, 1163 (8th Cir. 1999); *see also*, *Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001).  Where a specific constitutional right–such as the right to confront witnesses or to present a defense–is not implicated, federal habeas relief is available only if the allegedly erroneously admitted evidence "is almost totally unreliable and . . . the factfinder and

22

the adversary system will not be competent to uncover, recognize, and take due account of its shortcomings." *Barefoot v. Estelle*, 463 U.S. 880, 899 (1983).

2.      *Hearsay Evidence (Claim II)*

Petitioner contends that the prosecution improperly bolstered the victim's identification by questioning Detective Kaltz concerning the victim's statements during the photographic line-ups. Petitioner contends that these statements of the victim, testified to by Detective Kaltz, were hearsay and thus inadmissible.   The statements identified by petitioner in his brief, however, are all statements of identification made by the victim to Detective Kaltz.  As such, they were not hearsay. The Michigan Rules of Evidence provide that "[a] statement is not hearsay if . . . [t]he declarant testifies at trial and is subject to cross-examination concerning the statement, and the statement is . . . one of identification of a person made after perceiving the person."   MICH. R. EVID. 801(d)(1)(C).  As the Michigan Supreme Court has explained, this rule "permits the substantive use of any prior statement of identification by a witness as nonhearsay, provided the witness is available for cross-examination."  *People v. Malone*, 445 Mich. 369, 377, 518 N.W.2d 418, 422 (1994). Further, "there is no distinction regarding whether the out-of-court statement is offered by a third party or is the statement of identification of a witness on the stand regarding something the witness previously said."  *Id*.  Because the victim testified at trial and was available for cross-examination regarding her statements of identification made to Detective Kaltz, Kaltz's testimony was not impermissible hearsay.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

3.      *Bad Acts Evidence (Claims IV & V)*

Petitioner also contends that he was denied a fair trial by the introduction of his prior bad

acts.  Specifically, on cross-examination of petitioner's brother, the prosecutor attempted to elicit that petitioner's brother had secured a personal protection order against petitioner as a result of a fight the two had had in 1990.  Also, two unedited mug shots of petitioner were introduced, suggesting that he had a prior criminal record.

    As noted above, the issue here is not whether this evidence was properly admitted under the Michigan Rules of Evidence, but rather whether petitioner was denied a fair trial by the introduction of this evidence.  This being the case, petitioner is not entitled to habeas relief even if the evidence was not properly admitted under Rule 404(b).  Both the Supreme Court and the Sixth Circuit have repeatedly held that a defendant is not denied a fair trial by the admission of prior bad acts evidence which is relevant in the defendant's trial.  *See Estelle*, 502 U.S. at 69-70; *Dowling v. United States*, 493 U.S. 342, 353-54 (1990); *Coleman v. Mitchell*, 268 F.3d 417, 439-40 (6th Cir. 2001); *Pennington v. Lazaroff*, 13 Fed. Appx. 228, 232 (6th Cir. 2001) (per curiam) (unpublished); *Manning v. Rose*, 507 F.2d 889, 893-95 (6th Cir. 1974).  Here, the evidence was relevant to show that petitioner's brother was afraid of petitioner and therefore might have a motive to testify falsely on petitioner's behalf.

    With respect to the mugshots, the Michigan Court of Appeals determined that the photographs were properly admitted under Rule 404(b) because petitioner himself questioned the victim's ability to identify him and the photographs corroborated her identification testimony.  *See Hammond*, 2003 WL 22160437, at *1, slip op. at 2.  Further, as the court of appeals explained, any error in the admission of the photographs was harmless because defendant's brother, testifying as an alibi witness, "gave more damaging testimony which indicated that defendant had been involved in an assault."  *Id*.  Accordingly, the Court should conclude that petitioner is not entitled to habeas

24

relief on this claim.

H.     *Prosecutorial Misconduct (Claims I-II, VI-VIII)*

Petitioner next raises a number of claims of prosecutorial misconduct.  Specifically, he claims that the prosecutor committed misconduct by: (1) presenting perjured testimony (Claim I); (2) bolstering the victim's identification (Claim II); (3) making inappropriate comments during the trial (Claim VI); (4) failing to produce all res gestae witnesses (Claim VII); and (5) introducing his post-arrest statement (Claim VIII).  The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.     *Clearly Established Law*

For habeas relief to be warranted on the basis of prosecutorial misconduct, it is not enough that the prosecutor's conduct was "undesirable or even universally condemned."  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).  Rather, the misconduct must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  *Id.* (internal quotation omitted).  "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor."  *Smith v. Phillips*, 455 U.S. 209, 219 (1982).  In determining whether the prosecutor's conduct was so egregious as to warrant habeas relief, a court should consider "the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they are isolated or extensive; whether they were deliberately or accidentally placed before the jury; and the strength of the competent proof to establish the guilt of the accused."  *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (internal quotations and citations omitted).  In sum, to constitute a denial of due process the prosecutor's conduct must be "so pronounced and persistent that it permeates the entire atmosphere of the trial."  *Id.* (internal quotation omitted).

     2.    *Perjury*

Petitioner first contends that the prosecution presented perjured testimony from Detective Kaltz relating to the timing of the various photo line-ups and petitioner's arrest. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

Petitioner bears the burden of proving that the testimony amounted to perjury. As the Fourth Circuit has explained, "[a] defendant seeking to vacate a conviction based on perjured testimony must show that the testimony was, indeed, perjured. Mere inconsistencies in testimony by government witnesses do not establish the government's knowing use of false testimony." *United States v. Griley*, 814 F.2d 967, 971 (4th Cir. 1987); *accord United States v. Verser*, 916 F.2d 1268, 1271 (7th Cir. 1990) ("[N]ot every testimonial inconsistency that goes uncorrected by the government establishes a constitutional violation."); *Horton v. United States*, 983 F. Supp. 650, 657 (E.D. Va. 1997); *United States v. Hearst*, 424 F. Supp. 307, 318 (N.D. Cal. 1976). As the *Verser* court further explained, to establish a constitutional violation petitioner must show that the "inconsistent testimony amounted to perjury, 'the willful assertion under oath of a false, material fact.'" *Verser*, 916 F.2d at 1271 (quoting *Carey v. Duckworth*, 738 F.2d 875, 878 (7th Cir. 1984)); *see also*, *Horton*, 983 F. Supp. at 657 (quoting *United States v. Smith*, 62 F.3d 641, 646 (4th Cir. 1995)) (in order to establish *Napue* violation defendant must show that the government knowingly used perjured testimony, perjury being "false testimony concerning a material matter, 'given with the willful intent to deceive (rather than as a result of, say, confusion, mistake, or faulty memory.'"). As explained in part E.2 of this Report, *supra*, petitioner has failed to establish that Detective Kaltz committed perjury. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

26

3.      *Bolstering*

Petitioner also contends that the prosecutor improperly bolstered the victim's identification. In the statements identified by petitioner, however, the prosecutor merely presented admissible evidence (in the form of the victim's identification of petitioner to Detective Kaltz) or explained why the victim's identifications were credible in light of the evidence presented.  Improper vouching occurs either (1) "when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility thereby placing the prestige of the [prosecutor's office] behind that witness," or (2) through "comments that imply that the prosecutor has special knowledge of facts not in front of the jury."  *United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999); *see also*, *United States v. Emuegbunam*, 268 F.3d 377, 404 (6th Cir. 2001).[2]  Here, the prosecutor's comments did not place the prestige of the government behind the witness by making personal assurances of a witness's veracity, nor did the prosecutor imply that he knew of facts that had not been introduced. Thus, the prosecutor's comments were merely a fair characterization of the evidence presented to the jury based on his summation of that evidence.  As such, they did not constitute impermissible vouching for the credibility of the witnesses or the guilt of petitioner.  *See, e.g.*, *Nichols v. Scott*, 69 F.3d 1255, 1283 (5th Cir. 1995) (comment "is permissible to the extent that it draws a conclusion based solely on the evidence presented.") (internal quotation omitted); *United States v. Grey Bear*, 883 F.2d 1382, 1392 (8th Cir. 1989); *Martin v. Foltz*, 773 F.2d 711, 717 (6th Cir. 1985) (prosecutor may argue permissible inferences from the evidence); *United States ex rel. Williams v. Washington*, 913 F. Supp. 1156, 1163 (N.D. Ill. 1995) (prosecutor's assertion during closing argument that the

_____

[2]Some cases referring to only the first type of comment as "vouching" and describe the second type of comment as "bolstering."  *See Francis*, 170 F.3d at 551.

defendant had "lied" did not deprive petitioner of a fair trial where "the prosecution's statements were reasonable inferences drawn from the physical evidence and witness testimony[.]").

4.      *Comments*

Petitioner next argues that the prosecutor committed misconduct by questioning his mother about petitioner's employment.  The Michigan Court of Appeals, however, concluded that this testimony was permissible because it went to petitioner's credibility, specifically to his statement to the police that he remained at home on the night of the crime until he went to work the following morning.  *See Hammond*, 2003 WL 22160437, at *9, slip op. at 10.  Because this evidence was admissible as a matter of state law, the prosecutor did not commit misconduct by questioning petitioner's mother about petitioner's employment status.

5.      *Production of Res Gestae Witnesses*

Petitioner also argues that he was denied a fair trial by the prosecutor's failure to call all *res gestae* witnesses.  This claim fails for two reasons.

First, as petitioner explains, the witnesses whom he alleges were not called included the officers who investigated the scene, witnesses to his arrest, and the victim's neighbors who were not interviewed.  None of these witnesses, however, constitutes a *res gestae* witness under the Michigan *res gestae* statute.  It is true that, at the time of petitioner's trial, Michigan law required a prosecutor to call all *res gestae* witnesses.  *See* MICH. COMP. LAWS §§ 767.40-.40a; *see also*, *People v. Jones*, 641 Mich. App. 659, 236 N.W.2d 531 (1975); *People v. Anderson*, 64 Mich. App. 218, 235 N.W.2d 746 (1975).  Under Michigan law, a *res gestae* witness is "one who was an eyewitness to some event in the continuum of a criminal transaction and whose testimony will aid in developing a full disclosure of the facts surrounding the alleged commission of the charged offense."  *People v.*

*Hadley*, 67 Mich. App. 688, 690, 242 N.W.2d 32, 34 (1976). Here, none of the witnesses suggested by petitioner were witnesses to the actual criminal transaction, and thus they were not *res gestae* witnesses under Michigan law.

Second, even if the witnesses should have been listed and produced as *res gestae* witnesses as a matter of state law, petitioner is not entitled to federal habeas relief on this claim. The Sixth Amendment provides, in relevant part: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him [and] to have compulsory process for obtaining witnesses in his favor[.]" U.S. CONST. amend. VI. However, contrary to the implication of petitioner's argument, under the Sixth Amendment "[a] defendant has no right to confront a 'witness' who provides no evidence at trial. Nor is the government required to call all of the witnesses to a crime." *United States v. Heck*, 499 F.2d 778, 789 n.9 (9th Cir. 1974) (citations omitted) (internal quotation omitted); *see also*, *United States v. Bryant*, 461 F.2d 912, 916 (6th Cir. 1972); *United States v. Polisi*, 416 F.2d 573, 579 (2d Cir. 1969); *Mitchell v. United States*, 359 F.2d 833, 836 n.3 (7th Cir. 1966). For this reason, the Sixth Circuit and Judges of this Court have repeatedly found that the prosecution's failure to endorse or call a *res gestae* witnesses in accordance with Michigan law does not raise a constitutional claim cognizable on habeas review. *See, e.g.*, *Smith v. Elo*, No. 98-1977, 1999 WL 1045877, at *2 (6th Cir. Nov. 8, 1999); *Moreno v. Withrow*, No. 94-1466, 1995 WL 428407, at *1 (6th Cir. July 19, 1995) (per curiam); *Lewis v. Jabe*, No. 88-1522, 1989 WL 145895, at *3 (6th Cir. Dec. 4, 1989) (per curiam); *Atkins v. Foltz*, No. 87-1341, 1988 WL 87710, at *2 (6th Cir. Aug. 24, 1988) (per curiam); *Johnson v. Hofbauer*, 159 F. Supp. 2d 582, 601 (E.D. Mich. 2001) (Tarnow, J.). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

29

6.    *Introduction of Post Arrest Statement*

Finally, petitioner contends that the prosecutor committed misconduct by introducing his post arrest statements to Detective Kaltz.  Petitioner contends that this testimony was improper because:  (1) his silence was used against him; (2) the prosecutor referenced his post arrest statements prior to establishing the corpus delicti of the crime; and (3) the police lacked probable cause to arrest him.  The Court should conclude that petitioner is not entitled to habeas relief on any of these bases.

*a.  Use of Silence*

Petitioner first contends that the use of his silence violates his Fifth Amendment privilege against self-incrimination.  While testifying about petitioner's statements to him, Detective Kaltz indicated that petitioner did not confess.  Petitioner argues that this constitutes a comment on his silence in violation of the Fifth Amendment.  The Court should disagree.

The Fifth Amendment provides, in relevant part, that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself[.]"  U.S. CONST. amend. V.  This provision applies to the states via the Due Process Clause of the Fourteenth Amendment.  *Malloy v. Hogan*, 378 U.S. 1, 6 (1964).  The Supreme Court has determined that this provision "forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." *Griffin v. California*, 380 U.S. 609, 615 (1965).  Likewise, "it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial."  *Doyle v. Ohio*, 426 U.S. 610, 618 (1976).

Nevertheless, *Doyle* does not apply where the accused actually speaks with the police.  "Such questioning makes no unfair use of silence because a defendant who voluntarily speaks after

30

receiving *Miranda* warnings has not been induced to remain silent.  As to the subject matter of his

statements, the defendant has not remained silent at all."  *Anderson v. Charles*, 447 U.S. 404, 408

(1980).[3]  Here, petitioner spoke with Detective Kaltz, and his failure to confess was not an

invocation of the right to remain silent the comment on which is forbidden by the Fifth Amendment

privilege as interpreted in *Doyle*.  *Cf. Burton v. Bock*, 320 F. Supp. 2d 582, 591 (E.D. Mich. 2004)

(Lawson, J.) ("The mere refusal to answer or respond to a question, without more, does not

constitute an assertion or reassertion of the right to silence.").  Accordingly, the Court should

conclude that petitioner is not entitled to habeas relief on this claim.

### b.  Corpus Delicti

Petitioner next contends that he was denied a fair trial by the prosecutor's reference to his

statements during opening argument because the *corpus delicti* of the crime had yet to be

established.  This claim fails for two reasons.

First, petitioner's statements to Detective Kaltz were not covered by the *corpus delicti* rule.

As the Michigan Court of Appeals has explained, the *corpus delicti* rule "bars the prosecution from

using a defendant's confession in any criminal case unless it presents direct or circumstantial

---

[3]In *Anderson*, the Court considered explicitly the situation where a prior statement is used to impeach the defendant's subsequent trial testimony, a situation not present in petitioner's case. Nevertheless, the Sixth Circuit has held that *Anderson* is not limited to this specific context:

> The defendant contends that *Anderson v. Charles* does not control this case because he never made a prior statement which was inconsistent with his trial testimony.  This argument relies on a reading of *Anderson v. Charles* which is too restrictive.  While there was a prior inconsistent statement in that case, it merely furnished the occasion for questioning the defendant.  There is no indication that the Court limited its holding to situations involving prior inconsistent statements. What *Anderson v. Charles* teaches is that the *Doyle* rule has no application unless the defendant has remained silent and could be considered to have done so in reliance on the implied assurances of the *Miranda* warnings.

*United States v. Crowder*, 719 F.2d 166, 172 (6th Cir. 1983).

evidence independent of the defendant's confession that the specific injury or loss occurred and that some criminal agency was the source or cause of the injury." *People v. Ish*, 252 Mich. App. 115, 116, 652 N.W.2d 257, 258 (2002).  The court of appeals has also explained, however, that the *corpus deliciti* rule prohibits introduction only of admissions of guilt; it does not apply to statements which are merely "admissions of fact which by themselves [do] not constitute an admission of guilt." *People v. Rockwell*, 188 Mich. App. 405, 407, 470 N.W.2d 673, 674 (1991).  Here, petitioner's statements to Detective Kaltz did not admit guilt, and thus they were outside the scope of the *corpus delicti* rule.

Second, even if there was a violation of the *corpus delicti* rule, that violation does not establish a basis for habeas corpus relief.  The *corpus delicti* rule is not constitutionally mandated, and thus any violation of a state law *corpus delicti* rule is not cognizable on habeas review.  *See Evans v. Luebbers*, 371 F.3d 438, 442-43 & n.3 (8th Cir. 2004); *Lucas v. Johnson*, 132 F.3d 1069, 1078 (5th Cir. 1998); *Emerson v. Smith*, No. 00-CV-73044, 2001 WL 561212, at *12 (E.D. Mich. Apr. 13, 2001) (Borman, J.).  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### c.  Probable Cause for Arrest

Petitioner also claims that his statement was inadmissible because he was arrested without a warrant and without probable cause.  With respect to the first argument, as the Michigan Court of Appeals concluded this claim is without merit in light of *New York v. Harris*, 495 U.S. 14 (1990). *See Hammond*, 2003 WL 22160437, at *5, slip op. at 6.  In *Harris*, the Court held that the Fourth Amendment does not require the suppression of a confession following an illegal warrantless arrest, if the arrest was nevertheless supported by probable cause.  *See id*. at 17-18.  Thus, the warrantless

nature of petitioner's arrest did not render inadmissible his subsequent statements to Detective Kaltz.

Nor can petitioner establish that there was a lack of probable cause for his arrest.  The victim identified petitioner as her assailant in a photographic line-up, and this alone provided probable cause for the police to arrest petitioner, as "[a] positive identification by a victim witness is usually sufficient alone to establish probable cause." *Knight v. Borough of Penns Grove*, 50 Fed. Appx. 92, 94 (3d Cir. 2002); *see also*, *Ahlers v. Schebil*, 188 F.3d 365, 370 (6th Cir. 1999).  Petitioner's probable cause argument is based solely on his claim that his arrest occurred before at least some of the victim's identifications.  For the reasons discussed above, *see supra* part E.2, this argument is without merit.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

I.      *Ineffective Assistance of Counsel*

Petitioner finally raises a number of claims that his trial attorney rendered constitutionally inadequate assistance.  The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.      *Clearly Established Law*

The Sixth Amendment right to counsel and the corollary right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense.  *Id*. at 687.  These two components are mixed  questions of law and fact.  *See id*. at 698.  Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of

the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697.  If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.*

With respect to the performance prong of the inquiry, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id.* at 689; *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994).  "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted).  "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690.  With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695.

2.    *Analysis*

a.  *Derivative Ineffective Assistance Claims*

For the most part, petitioner's ineffective assistance of counsel claims are derivative of his substantive habeas claims discussed above.  Thus, petitioner contends that counsel was ineffective for failing to object, or object properly, to the improper jury instructions, evidence, and prosecutorial misconduct.  As explained throughout this Report, however, each of these underlying claims lacks merit.  Counsel cannot be deemed ineffective for failing to raise meritless objections, and thus petitioner cannot show that counsel was ineffective for failing to object.  *See Anderson v. Goeke*, 44 F.3d 675, 680 (8th Cir. 1995) (counsel not ineffective for failing to raise meritless objection);

34

*Burnett v. Collins*, 982 F.2d 922, 929 (5th Cir. 1993) (same).

### b. Other Claims

Petitioner's voluminous brief is scattered with additional assertions of counsel's ineffective assistance. To the extent that these claims are identifiable, they are without merit.

Petitioner argues that his counsel was ineffective when he admitted during closing argument that Jeff Hammond, petitioner's brother and alibi witness, was a bad witness. However, the prosecution severely damaged Jeff Hammond's credibility on cross-examination, and it was not unreasonable for trial counsel to concede the obvious in order to credibly argue the other points of his defense.

Petitioner also claims that counsel was ineffective for eliciting hearsay evidence that another witness was unable to identify petitioner on the night of the crime. As the witness was unable to identify petitioner, however, petitioner suffered no prejudice from this evidence.

Petitioner next claims that counsel was ineffective for asking the jury to consider the lesser charge of entering without permission, because the prosecutor had failed to establish that even if petitioner did enter the victim's house he did so intending to commit a larceny. This was a reasonable strategy in light of the certainty of the victim's identification and the weaker evidence of petitioner's intent. *See United States v. Holman*, 314 F.3d 837, 840 (7th Cir. 2002) ("Conceding an indefensible charge is thought to build credibility with a jury by acknowledging the overwhelming evidence of guilt for that particular charge, creating goodwill and trust that can be applied towards arguments attacking the remaining charges."); *Clozza v. Murray*, 913 F.2d 1092, 1099 (4th Cir. 1990) ("[T]here is a distinction which can and must be drawn between . . . a tactical retreat and . . . a complete surrender.").

Finally, petitioner contends that counsel failed to call two alibi witness, Rose Howard and Mike Harless. However, as described by petitioner Rose Howard was not an alibi witness, but a witness to his arrest by the police. Petitioner does not describe what testimony she would have presented, but only states that it would have exposed Detective Kaltz's perjury. Even if this were so, petitioner cannot demonstrate prejudice because Kaltz's alleged perjury related to the time of petitioner's arrest, which in turn was relevant only insofar as petitioner's arrest triggered a right to have counsel present at any photographic line-up. However, as explained in part E.2, *supra*, no such right to counsel was triggered by petitioner's arrest. Thus, even assuming that Howard would have offered any evidence supportive of petitioner's theory, that evidence was irrelevant either to petitioner's guilt or innocence or to the admissibility of the victim's pre-trial identifications. Thus, petitioner cannot show that he was prejudiced by counsel's failure to call Howard.

Petitioner also argues that counsel failed to call Mike Harless as an alibi witness. In support of this claim, petitioner points to a police report detailing an interview with Harless (attached as Exhibit B to petitioner's memorandum). According to the report, Harless indicated that he saw petitioner on the evening of the crime sometime between 8:00 and 8:30, when petitioner went to the corner store for about 10 minutes. Harless indicated that petitioner's car was in the driveway for the rest of the evening, based on the fact that petitioner's car was loud and Harless would have heard petitioner leaving. Even assuming that Harless would have testified to these facts, petitioner cannot establish prejudice. Petitioner presented alibi testimony from his mother and brother, both of whom testified unequivocally that petitioner was in the house with them at the time of the crime. Nonetheless, the jury rejected this evidence and convicted petitioner. There is not a reasonable probability that Harless's testimony would have altered this result. First, Harless could not

36

unequivocally testify as to petitioner's whereabouts at the time of the crime.  At best, he could only testify that petitioner's car was still at petitioner's home at that time.  And, from the police report, it appears that Harless could have given this testimony based only on the fact that he did not hear petitioner's car leave, not that he actually saw the car in the driveway at 11:00 p.m.  In any event Harless's statement does nothing more than give an alibi for petitioner's car, not for petitioner. Nothing more can be inferred from Harless's statement to the police, and petitioner has provided no additional affidavits or other evidence as to what, if anything, Harless would have said if called to the stand.  *See United States v. Pierce*, 63 F.3d 818, 833 (6th Cir. 1995) (petitioner bears the burden of establishing counsel's ineffectiveness); *Lewis v. Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993) (same).  In light of the jury's rejection of the more definitive alibi testimony which was presented, it is not reasonably probable that the jury would have reached a different conclusion if it had been presented with Harless's equivocal alibi testimony.  *Cf. Fargo v. Phillips*, 58 Fed. Appx. 603, 607-08 (6th Cir. 2003); *White v. Kapture*, No. 00-73974-DT, 2001 WL 902500, at *8 (E.D. Mich. June 26, 2001) (O'Meara, J.); *Thomas v. Newland*, No. C-96-0547, 1999 WL 66520, at *3-*4 (N.D. Cal. Feb. 2, 1999); *United States ex rel. Emerson v. Gramley*, 902 F. Supp. 143, 147 (N.D. Ill. 1995). Thus, petitioner cannot demonstrate he was prejudiced by counsel's failure to call Harless, and the Court should conclude that petitioner is not entitled to habeas relief on this claim.

J.      *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law.  Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.

III.      NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991).  *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated:6/9/06

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on June 9, 2006.

s/Eddrey Butts
Case Manager

38